**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------X

TRANSFER TO, INC. d/b/a DT ONE

            Petitioner

v.

DOLLAR PHONE ENTERPRISE, INC.

            Respondent.

_____/

Civil Action No. 21-cv-01838

**COMPLAINT**

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner, Transfer To, Inc. d/b/a DT One, petitions the Court for an order confirming an arbitration award pursuant to 9 U.S.C. § 9, and states as follows:

### Parties, Jurisdiction, and Venue

1.      Petitioner, Transfer To, Inc, d/b/a DT One ("DT One") is a corporation incorporated in Delaware. DT One's principal place of business is located at 72 Anson Road, #06-01, Singapore 079911.

2.      Respondent, Dollar Phone Enterprise, Inc. ("Dollar Phone") is a corporation incorporated in New York. Dollar Phone's principal place of business is located at 232 Broadway, Brooklyn, New York, 11211.

3.      This Court has jurisdiction pursuant to 28 U.S.C § 1332 since the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different states pursuant to 28 U.S.C. § 1332(a)(4).

4.      In the alternative, the Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) to the extent that DT One may be considered a citizen of a foreign state.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) since Dollar Phone resides in this District pursuant to 28 U.S.C. § 1391(d).

**Facts**

6.      On or about September 19, 2011, DT One and Dollar Phone entered into a Mobile Prepaid International Airtime Transfer Service Agreement ("Agreement"). A true and correct copy of the Agreement is attached as **Exhibit 1**.

7.      Paragraph 12.8 of the Agreement states that the parties "shall submit to the exclusive jurisdiction of the American Arbitration Association."

8.      On or about January 4, 2021, DT One initiated an arbitration in the American Arbitration Association ("AAA") against Dollar Phone. The arbitration related to unpaid invoices that DT One rendered to Dollar Phone pursuant to the Agreement.

9.      The amount demanded in the arbitration was $300,534.07.

10.     On or about March 25, 2021, the Arbitrator presiding over the arbitration issued an award in favor of DT One and against Dollar Phone ("Arbitration Award"). A true and correct copy of the Arbitration Award is attached as **Exhibit 2**.

11.     The total sum awarded to DT One in the Arbitration Award was $309,858.57, consisting of $299,928.07 in principal and $9,931.50 in arbitration fees and costs.

12.     As of the date of this Petition, Dollar Phone has not paid the Arbitration Award.

**Relief Sought**

13.     DT One is entitled to entry of a judgment of the Court upon the Arbitration award pursuant to 9 U.S.C. § 9.

14.     The AAA Commercial Arbitration Rules, which were incorporated into the Agreement by virtue of the grant of jurisdiction to the AAA, provide that parties to an arbitration

are deemed to have consented to judgment upon the Arbitration Award in any federal or state court having jurisdiction.

15.     Dollar Phone thus agreed that the Court may confirm and enter judgment upon the Arbitration Award.

WHEREFORE, Petitioner, Transfer To, Inc., d/b/a DT One, respectfully requests that the Court grant the following relief:

a.      Confirm the Arbitration Award pursuant to 9 U.S.C. § 9;

b.      Enter judgment upon the Arbitration Award, in favor of Transfer To, Inc., d/b/a DT One, and against Dollar Phone, Inc.;

c.      Award Transfer To, Inc. d/b/a DT One its court costs in accordance with Rule 54(d); and

d.      Grant such other relief as is just and equitable.

**Dated this 5th day of April, 2021.**

> **Lorium Law**
> *Attorneys for Transfer To, Inc. d/b/a DT One*
> 101 Northeast Third Avenue, Suite 1800
> Fort Lauderdale, Florida 33301
> Telephone (954) 462-8000
> Facsimile   (954) 462-4300
>
>
> By: _/s/Kenneth B. Robinson_____
> **KENNETH B. ROBINSON**
> New York Bar No. (KR8574)
> krobinson@loriumlaw.com

EXHIBIT "1"



## MOBILE PREPAID INTERNATIONAL AIRTIME TRANSFER SERVICE AGREEMENT

This Agreement is entered into by and between

**Transfer To Inc.** a company incorporated in Delaware and having its principal place of business at 1530 Page Mill Road, Suite 200 Palo Alto, CA 94303, USA (hereinafter called "TransferTo").

and

**Dollar Phone Enterprise, Inc.,** a company registered in New York and having its principal place of business at 232 Broadway, New York (hereinafter referred to as Dollar Phone or the Customer).

TransferTo and Dollar Phone are collectively referred to as the **"Parties"** or individually referred to as the **"Party"**.

This agreement shall be effective from 9/19/2011  ("Effective Date")

## RECITALS

A.   TransferTo is operating an International Mobile Prepaid Recharge network providing a multi channel service for online connections to financial institutions, mobile operators and enterprises.

B.   Dollar Phone is desirous of offering the Mobile Prepaid International Airtime Transfer Solution. (the Services)

C.   At the request of Dollar Phone, TransferTo hereby agrees to undertake the Scope of Works in providing the Services on the terms and conditions hereinafter appearing.

In consideration of the mutual promises, representations and warranties herein contained TransferTo and Dollar Phone **HEREBY AGREE AS FOLLOWS:**



1.  **DEFINITIONS AND INTERPRETATION**

1.1   Definition

In this Agreement, the following terms used in this Agreement shall have the meanings indicated below unless the contrary intention appears: -:

Airtime Credit

refers to the value credited to a mobile user prepaid account which may be consumed by the mobile user in using mobile phone services as per its mobile operators' terms and conditions that may change from time to time; In accordance with said terms and conditions, the credits may be used to purchase multiple services offered by the mobile operators such as SMS, Data, domestic and international calls, mobile content. Airtime credit has a limited validity period: Depending on the service and denominations the Airtime Credit will expire after a period set by the mobile operator. Airtime Credit includes local taxes of the destination country such as Value Added Tax (VAT) and other local taxes.

Confidential Information

means the confidential information described in Clause 9 of this Agreement;

Effective Date

means the date the Services is made available

Recipient

refers to the recipient of the Airtime transferred

1.2   Interpretations

(a)   References to Recitals, Clauses, Appendices, Exhibits and Schedules are to be construed as references to Recitals, Clauses, Appendices, Exhibits and Schedules of this Agreement, unless otherwise provided herein.

(b)   A cross reference to a Clause number is a reference to its subclauses.

(c)   All references to provisions of statutes and legislation include such provisions as amended, modified or re-enacted.

(d)   The word "law" or "laws" mean any present or future law and legislation and any constitution, decree, judgment, legislation, order, ordinance, statute, treaty, directive, by-law, rule or regulation, the compliance with which is in accordance with the general practice of persons to whom such rule or regulation is addressed.



(e)     The expression "this Agreement" or any similar expression shall comprise the Recitals, Clause, Appendices, Exhibits and Schedules of this Agreement and include any supplemental written agreement thereto as may be executed and be in force from time to time.

(f)     Words applicable to natural persons shall include any body of persons, company, corporation, firm or partnership incorporated or unincorporated and vice versa.

(g)     Words importing a gender shall include any other gender.

(h)     Words importing the singular number shall include the plural number and vice versa including the definitions referred to in Clause 1 hereof.

(i)     The headings and sub-headings to the Clauses of this Agreement are for convenience of reference only and shall neither affect the interpretation and construction thereof nor shall limit or extend the language of the provisions to which they refer.

(j)     Where any word or expression is defined in this Agreement, the definition shall extend to all grammatical variations and cognate expressions of the word or expression so defined.

(k)     For the purpose of calculating any period of time stipulated herein, or when an act is required to be done within a specified period after or from a specified date, the period is inclusive of and time begins to run from the date so specified.

(l)     Wherever there shall appear any reference to a time within which an act should be done or agreement reached or consent given, such reference shall be deemed to be read as including the expression "or any other period agreed in writing between the Parties from time to time".

(m)    Any technical term not specifically defined in this Agreement shall be construed in accordance with the general practice of those in that profession to which the term is used.


1.3     The Recitals and Exhibits of and to this Agreement shall have effect and be construed as an integral part of this Agreement, but in the event of any conflict or discrepancy between any of the provisions of this Agreement such conflict or discrepancy shall, for the purposes of the interpretation and enforcement of this Agreement, be resolved by :

(a)     giving the provisions contained in the clauses of this Agreement priority and precedence over the provisions contained in the Recitals and Exhibits of and to this Agreement; and

(b)     giving the provisions contained in the Exhibits of this Agreement priority and precedence over the provisions contained in the Recitals to this Agreement.



## 2.    THE SERVICES

2.1    TransferTo shall ensure that its server used for the Services is able to receive instruction in a form of a designated command transmitted from the Dollar Phone platform;

2.2    TransferTo shall ensure that the valid denomination value is sent to the Recipients mobile number as per the instruction received by TransferTo from the Dollar Phone platform;

2.3    TransferTo shall provide Dollar Phone issue invoices ("the Invoice") pertaining to the successful Airtime transfers made to the Recipients.

2.4    Dollar Phone shall provide everyday a report with all the successful transactions as recorded by its system during the previous day. If Dollar Phone does not provide these reports on time, TransferTo reporting will be the only reference report for invoice. In the event there is a discrepancy between Dollar Phone's reporting and TransferTo's reports, both Parties agree to review the discrepancy amicably by comparing the two reports and both Parties shall in good faith carry out an investigation at each Party's own cost and expense to ascertain the cause of the said discrepancy and if commercially viable, to rectify any problems relating to the systems/ platform and to determine and settle the under- or over-payment accordingly.

2.5    In the event the Customer disputes the amount of an invoice, the Customer must notify TransferTo in writing within sixty (60) Business Days of date of the relevant invoice, including all details reasonably necessary to document its claim. Notwithstanding the above, any undisputed amount shall be paid by the Customer according to the provisions contained in Exhibit A.

2.6    In the event it is agreed by the parties that the amount invoiced by TransferTo was correct, the Customer must pay the outstanding amount to TransferTo.

2.7    TransferTo shall provide Dollar Phone with the GUI (Graphical User Interface) for the purpose of Dollar Phone's Customer Service Personnel interfacing with all the information relating to the Services including but not limited to the Customers, Recipient and the transaction records kept by TransferTo ("Records"). TransferTo hereby agrees to keep the Records during the whole duration of this Agreement including the renewals made after the expiration of this Agreement as stated in Clause 3.1 herein. In the event of the termination of this Agreement as provided in Clause 11 herein, TransferTo shall transfer all the records kept in its possession to Dollar Phone.

2.8    Unless otherwise agreed between the Parties, Dollar Phone is entitled to resell the Airtime Credit transfer service provided by Transfer To™ under this agreement though Dollar Phone's own network of distributors and web portal.

2.9    TransferTo reserves the right to require the immediate suspension of the Airtime credit transfer service by Dollar Phone where the reselling of the service by individual third parties is reasonably deemed inappropriate by TransferTo.

## 3.    FEES



TransferTo and Dollar Phone hereby agree to the fees and the payment terms set out in Exhibit A. TransferTo and Dollar Phone further agree that any amendments to the fees schedule and the payment terms will be made via e-mail writing.

## 4.    MISUSE OF CUSTOMERS' INFORMATION

TransferTo shall implement necessary security measures on TransferTo's server to avoid misuse of the Customers' information obtained by TransferTo in fulfilling its obligations under this Agreement. TransferTo agrees to allow Dollar Phone free, with a notice of 48 hours, access during the validity of this Agreement to the premises where TransferTo's server is stored to conduct an audit on the server and system used by TransferTo.

## 5.    GENERAL WARRANTIES

5.1    TransferTo represents and warrants that:

(a)    it has the authority and the legal capacity to enter into this Agreement and fulfil its obligations  and any licence(s) related thereto and is not under any disability, restriction or prohibition which prevents it from performing or adhering to any of its duties and obligations under this Agreement;

(b)    it possesses the requisite professional skill and technical expertise to perform its obligations hereunder in accordance with the highest professional standards;

(c)    has not and will not enter into any agreement that is inconsistent with its obligations hereunder;

(d)    that it has obtained, complied with and conforms to all necessary acts, conditions, approvals, consents, authorisations, licenses and agreements required to be done, fulfilled or performed in order to :

(i)    enable TransferTo to lawfully enter into, exercise its rights under and perform the obligations expressed to be assumed by it in this Agreement;

(ii)    ensure that the obligations expressed to be assumed by TransferTo in this Agreement are legal, valid, binding and enforceable;

(iii)    render this Agreement admissible in evidence in Court.

5.2    Dollar Phone acknowledges that TransferTo is connected to international Mobile Telecommunications Operator networks which are not under the direct and/or indirect control of TransferTo. Dollar Phone acknowledges that TransferTo shall not be liable of any outage of Services due to a service interruption of a Mobile Telecommunications Operator.

TransferTo cannot guarantee that the Services will never be faulty but will do its reasonable commercial efforts to correct reported faults and make the Service available as soon as TransferTo reasonably can. TransferTo may to the extent reasonable and necessary temporarily suspend the Service for maintenance reasons and force majeure events, by giving Dollar Phone three (03) days prior notice of such suspension.



Dollar Phone shall be responsible for providing customer service support to the Customers in respect of the Services.

EXCEPT AS EXPRESSLY PROVIDED IN THIS ARTICLE, TRANSFERTO MAKES NO WARRANTIES, REPRESENTATIONS, CONDITIONS OR OTHER TERMS IN CONNECTION WITH TRANSFERTO NETWORK   AND DISCLAIMS ALL TERMS NOT EXPRESSLY CONTAINED HEREIN, WHETHER WRITTEN OR ORAL, CONTRACTUAL OR STATUTORY, EXPRESS OR IMPLIED, OR OTHERWISE INCLUDING WITHOUT LIMITATION ANY TERMS AS TO MERCHANTABILITY, EXCEPT THAT TRANSFER TO WARRANTS THAT IT WILL USE ITS BEST EFFORTS TO CONTRACT ONLY WITH QUALITY AND REPUTABLE MOBILE OPERATORS AND TO MONITOR AND TAKE STEPS TO ENSURE THAT SUCH OPERATORS PROVIDE TO CUSTOMERS THE SERVICES  PURCHASED.

## 6.    CONFIDENTIALITY

6.1   TransferTo hereby undertakes to keep confidential all information and facts relating to the Customers obtained during the course of performing its obligations herein including this Agreement. TransferTo is only allowed to use the Customers' information for the purpose of fulfilling its obligations herein contained. TransferTo is not allowed to disclose the Customers' information to any other third party.

6.2   Each of the Parties acknowledges that, during the negotiation and performance of this Agreement, they may acquire knowledge of information considered by one or more of the others to be confidential and proprietary. Each Party shall maintain for the other any such information that is identified as confidential at the time of its disclosure or that is acquired under circumstances reasonably considered to impose an obligation of confidentiality, and no Party shall use such information except as permitted by this Agreement nor disclose such information to any other person or organization without the prior written consent of the Party originally supplying such information.  Each Party shall protect such confidential information against unauthorized use or disclosure with at least the same degree of care as such party exercises to protect its own information of like character and importance, and in every instance with at least reasonable care.

6.3   The obligations of confidentiality and protection imposed by this Clause shall not apply or shall cease to apply to any information that:

   a)    was known to the receiving Party without an obligation of confidentiality to the others prior to its receipt hereunder;

   b)    is or becomes publicly available without breach of this Agreement;

   c)    is received from a third party without an obligation of confidentiality to the disclosing party and without breach of this Agreement;

   d)    is disclosed by the disclosing Party to a third party free of restriction;

   e)    either party is legally compelled to disclose such information;

   f)    is already possessed or independently developed by the receiving party;



## 7. INTELLECTUAL PROPERTY RIGHTS

7.1    Except as expressly provided herein, each Party hereto shall not use, or permit its principal, agents or employees to use the other Party's name, logo, trademark, or service mark or any derivative thereof, for any purpose without the prior written consent of the other Party. Under no circumstances may any party use or permits its employees, principal, agents or employees to use the other party's name, logo, trademark, service mark or any derivative thereof, in any fraudulent or misleading manner.  TransferTo shall use its best efforts to secure on behalf of Dollar Phone the right of Dollar Phone to display the trademarks and/or service marks of TransferTo's international mobile carriers in connection with Dollar Phone's distribution of the Services.

7.2    Each Party hereby acknowledges that all proprietary rights of the other Party relating to or in connection with the Services and all data, materials, information, detail, manuals and updates thereof including without limitation, any trademark, patent and copyright, shall at all times vest and remain vested in the other Party.

7.3    Neither Party will gain by virtue of this Agreement any rights of ownership of copyrights, patents, trade secrets, trademarks or any other intellectual property rights owned by the other.

## 8.    LIMITATION OF LIABILITY

8.1    Except as otherwise expressly stated in this Agreement, in no event shall either Party be liable to the other Party or any other third party for exemplary, incidental, indirect, special, punitive or consequential damages of any kind, including without limitation loss of profit, loss of use, savings or revenue, arising out of this Agreement.

8.2    The exclusions and limitations described above shall not apply where mandatory laws do not allow such exclusions or require higher limits. In such circumstances the minimum limits prescribed by law shall apply.

## 9.    FORCE MAJEURE

9.1    Neither Party shall be liable to the other for delay in performing its obligations, or failure to perform any such obligations under this Agreement, if the delay or failure results from circumstances beyond the reasonable control of such Party, including but not limited to, an Act of God, governmental act, fire, explosion, accident, war, armed conflict or civil commotion. The Parties shall use all reasonable endeavours to notify each other of the occurrence of a force majeure event and to eliminate or minimise the effect of delay resulting from such circumstance, in which event the performance of such Party's obligations shall be suspended during that period of force majeure and that Party shall be granted an extension of time for performance equal to the period of delay.

9.2    If the delay or failure to perform a Party's obligations due to force majeure exceeds thirty (30) days, either Party may immediately terminate this Agreement on providing notice to the other Party.



## 10.   TERMINATION

10.1   Either Party shall be entitled to terminate this Agreement by giving at least thirty (30) days prior written notice to the other Party without assigning any reason whatsoever.

10.2   Either Party shall be entitled to terminate this Agreement in whole or in part by a written declaration forthwith and without application to a court of law if:

a)   the other Party fails to meet its obligations under the terms of this Agreement, and fails to remedy such failure within thirty (30) days after receipt of a written notice to do so, unless the failure, given its special nature or minor importance, does not justify the termination of the Agreement and the consequences flowing there from;

b)   the other Party has applied for or has been granted suspension of payments or has been declared bankrupt, or any analogous event;

c)   the performance of the other Party's obligations under this Agreement is suspended for more than sixty (60) days by an event of force majeure.

10.3   The Agreement will be terminated with immediate effect in case the Customer has not used the services  provided under this Agreement for six (6) consecutive months.

10.4. Notwithstanding termination of this Agreement for any reason, TransferTo shall be obliged to supply Services to customers that already purchased such services.

## 11.   NOTICES

All notices required or authorized by this Agreement shall be given in writing by email and hard copy and shall be delivered to the following addresses or at such address as the recipient may have notified to the other Party hereto in email or hard copy writing.

If to TransferTo:

**Attn: Eric Barbier**

Email: Notices@transfer-to.com

Address:
Transfer To Inc
1530 Page Mill Road, Suite 200
Palo Alto, CA 94303
USA

If to the Dollar Phone:

**Attn:  Elisha Hisiger**

Email: Elisha@dollarphone.com and legal@dollarphone.com

Address:
Dollar Phone Enterprise, Inc.
232 Broadway
Brooklyn, NY 11211
USA

## 12.   GENERAL PROVISIONS



12.1 **Headings**. The headings of the Clauses and sub-Clauses of this Agreement are for general information and reference only and they shall in no way define, limit or describe the scope of the provisions of such Clauses and shall not be considered in the interpretation or enforcement of this Agreement. All schedules, exhibits or appendices hereto shall be read together and form an integral part of this Agreement.

12.2 **Assignment**. No Party may assign this Agreement without the prior written consent of the other Party; such consent shall not be unreasonably withheld.

12.3 **Amendment and Variation**. The terms, conditions and provisions of this Agreement shall not be varied except by agreement in writing signed by both Parties.

12.4 **Waiver**. The failure of any Party to enforce any provision of this Agreement shall not be construed as a waiver of such provision or the right thereafter to enforce each and every provision. No waiver by any Party, express or implied, of any breach of such term or condition shall operate or be construed as a waiver of any subsequent breach.

12.5 **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of the Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

12.6 **Successors Bound**. This Agreement shall be binding upon each of the Parties hereto and their respective successors in title and permitted assigns.

12.7 **Relationship of the Parties**. Nothing in this Agreement shall constitute or be deemed to constitute a partnership between both the parties and none of them shall have any authority to bind the other party in any way nor shall this Agreement be construed to constitute any of the Parties hereto as the agent of the other party.

12.8 **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of Delaware and parties shall submit to the exclusive jurisdiction of the American Arbitration Association.

p

12.9 **Legal Costs**. Each Party shall be liable for their own solicitors' costs and TransferTo shall only be liable for the stamp duty payable of this Agreement.

12.10 **Survival**. The provisions under Clause 1 (Definitions and Interpretation), Clause 6 (Confidentiality), Clause 7 (Intellectual Property Rights), Clause 8 (Limitation of Liability) and Clause 10(Termination) and any other provision which by logic should survive, shall survive the expiry or termination of this Agreement.

13. **ENTIRE AGREEMENT**

This Agreement supersedes, terminates, and otherwise voids any and all prior written and/or oral agreements between the Parties with respect to the Services or the Scope of Works. Such agreements include, but are not limited to, proposals, bids or responses to



bids (if any) issued by TransferTo to Dollar Phone prior to execution of this Agreement. This Agreement incorporates the Parties' entire understanding and there are no warranties, representations, or understandings of any kind, nature, or description whatsoever made by either Party to the other, except such as are expressly set out herein. This Agreement may be modified only by a written instrument signed by all Parties, making specific reference to this Agreement and to the changes to be made.

**IN WITNESS WHEREOF**, the Parties by their duly authorized representatives have executed this Agreement as of the date first indicated above.

**Dollar Phone Enterprise, Inc.**                    **TRANSFER TO INC**

By:                                                  By:

Name:  Elisha Hisiger                                Name: Eric Barbier

Title: SVP, Business Development                     Title: President

(This is the signing page of the **MOBILE PREPAID INTERNATIONAL AIRTIME TRANSFER SERVICE AGREEMENT** between **TRANSFER TO INC** and **<COMPANY NAME>**)



# EXHIBIT A

## Payment Terms & Conditions

### Price Schedule and Payment Terms

Both Parties hereby agree to the following fees as follows:

1. Dollar Phone shall pay TransferTo the following fees
   a. The Airtime fee as in price list in **EXHIBIT A.1**
   b. Initial deposit of 5,000 USD refundable only in the event Dollar Phone terminates this agreement and is not in material breach of any term.

2. TransferTo reserves the right to request Dollar Phone to increase the deposit in order to cover the average amount of airtime used per month. Dollar Phone shall pay the corresponding deposit increase within 7 days. TransferTo shall return all refundable deposit funds to Dollar Phone within 7 days of service termination.

3. All prices are subject to changes with 14 (fourteen) days notice period.

4. TransferTo shall render monthly invoices if Dollar Phone airtime usage is below 50,000 USD per month.

5. TransferTo shall render weekly invoices if Dollar Phone airtime usage is above 50,000 USD per month.

6. All payments shall be made by Dollar Phone within 7 days from the date of receipt of the invoice by Dollar Phone.

7. Payments shall be made by Dollar Phone to TransferTo bank account as detailed below:

   | | |
   |---|---|
   | TO: | SIL VLY BK SJ |
   | | 3003 TASMAN DRIVE, SANTA CLARA, CA 95054 |
   | ROUTING & TRANSIT #: | 121140399 |
   | FOR CREDIT OF: | TRANSFER TO INC |
   | ADDRESS: | C/O RICHARD HORNING, 1530 PAGE MILL ROAD |
   | ADDRESS: | SUITE 200, PALO ALTO CA 94304 |
   | CREDIT ACCOUNT #: | 3300693750 |

8. The Customer is solely responsible for all costs, incl. bank charges, resulting from payment transfers

9. TransferTo shall, upon 5 business days prior notice, suspend the service in case of non compliance with the above payment terms and conditions.

EXHIBIT "2"

# AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

Case Number: 01-21-0000-0130

TRANSFER TO, INC. ("Claimant")
-vs-
DOLLAR PHONE ENTERPRISE, INC. ("Respondent")

# AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with Paragraph 12.8 of that certain Mobile Prepaid International Airtime Transfer Service Agreement (the "Agreement") between Claimant and Respondent, with an Effective Date of September 19, 2011 and having been duly sworn, and having fully reviewed and considered the Exhibits and other documents submitted to me by Claimant and the testimony at the Final Hearing, and Respondent having failed to appear after due notice by mail and email in accordance with the Rules of the American Arbitration Association, hereby AWARD, as set forth below.

Pursuant to Section 12.8 of the Agreement, the Arbitration is governed by the laws of the State of Delaware and the parties have agreed to the exclusive jurisdiction of the American Arbitration Association ("AAA"). This matter has been administered by the AAA in accordance with its Commercial Arbitration Rules (the "Rules"). As stated above, Respondent did not file a submission after a reasonable effort was made to notify Respondent of this Arbitration.

In this matter, Claimant was represented by Shay B. Cohen, Esq. of Rice, Pugatch, Robinson, Storfer & Cohen, PLLC and David Spechler, Esq., its "in house" attorney. This Arbitrator declared the Final Hearing closed effective March 23, 2021 making this Award due on or before April 22, 2021. Capitalized terms not otherwise defined in this Award shall have the meaning as set forth in the Agreement. All findings in this Award have been made using the preponderance of the evidence standard. At the close of testimony, Claimant stated on the record that they had a full and fair opportunity to present their case.

**Discussion**:

To support its Claims, Claimant offered the testimony of Mohammed Asim Iqbal, Accounts Receivable Lead with Claimant ("Iqbal"). According to Iqbal, Claimant is a wholesaler of prepaid cell phone minutes. The Agreement allowed Respondent to purchase Airtime Credit from Claimant.

Iqbal claims to be familiar with the account of Respondent and with Claimant's record keeping and file maintenance practices. Iqbal claims Respondent breached the Agreement by failing to pay certain invoices – specifically Invoices #729 in the amount of $294,196.94 and Invoice #760 in the amount of $5,731.13. Iqbal stated that Respondent was aware of the obligation and, in fact,

acknowledged the debt in emails (Exhibit 8). Further, Respondent did not question or challenge the debt at any time. Claimant seeks to recover the sum of such Invoices - $299,928.07 – plus the costs of this Arbitration.

Without any rebuttal from Respondent, this Arbitrator must accept, as fact, the testimony provided by Iqbal. This Arbitrator finds Respondent in breach of the Agreement. Pursuant to the testimony and in accordance with the terms of the Agreement, Claimant is entitled to the sum of $299,928.07, which is the total of the unpaid Invoices. In addition, Claimant is entitled to recover the costs of this Arbitration.

**Award**:

As to Claimant's claims, this Arbitrator finds in favor of Claimant and against Respondent in the amount of TWO HUNDRED NINETY-NINE THOUSAND NINE HUNDRED TWENTY-EIGHT DOLLARS AND SEVEN CENTS ($299,928.07).

**Fees of American Arbitration Association and Arbitrator Compensation**:

Pursuant to the Agreement, all fees of the American Arbitration Association ("the Association") totaling $8,250.00 and the compensation of the Arbitrator totaling $1,681.50 shall be borne by Respondent. Therefore, Respondent shall pay Claimant $9,931.50.

The TOTAL SUM Awarded to the Claimant is $309,858.57.

All payments set forth in this Award shall be due no later than thirty (30) days from the date of this Award. This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby, denied.

I, Lawrence A. Saichek, do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument which is my Award.

3/25/21
Date

Lawrence A. Saichek

Case #01-20-0001-7053